Martin, J.
The executor of James Brown, the husband of the defendant’s testatrix, having obtained in this court a judgment against the plaintiffs, for the balance of the price of a part of a plantation sold by James Brown to J. B. Humphreys, the husband of one of the plaintiffs, and .the father of the others, the plain *426 tiffs, stating that J. B. Humphreys was the devisee under the will of Mrs. Brown, of her share in the part of the plantation sold to him by James Brown, obtained an injunction to prevent the payment by the Sheriff to the executor of James Brown of a part of our judgment, corresponding to that of Mrs. Brown in the sale of James Brown to J. B. Humphreys.
The defendant, Clay, pleaded the prescription of ten years; and as res judicata, the judgment of this court in the suit of James Brown’s executor against the plaintiffs; (see 5 Robinson, 299 ;) further, that the will of Nancy Brown did riot devise any land to J. B. Humphreys, but gave him only the mere right of claiming a title from James Brown, to that part of the plantation afterwards transferred by the latter to the former, according to an agreement existing between them at the time Nancy Brown made her will, without any intention on her part to release J. B. Humphreys from the payment of the price, and that accordingly, between the date of that will and the death of the testatrix the transfer was made, according to their agreement and the wishes of the testatrix.
The facts of the case are these : soon after the arrival of James Brown and his wife in Louisiana, he purchased a sugar plantation, of which he afterwards sold an undivided third to J. B, Humphreys, his nephew, to whom he committed the management of the estate; the successful administration of which induced the latter, about the period when the former was preparing to leave the State for the city of Washington as a senator of the United States, to design to increase his interest to one-half; and accordingly James Brown and he agreed, that he should have an additional undivided sixth of the estate, for the price of $18,000. This agreement was not formally committed to writing, though different parts of it are found in the correspondence of the parties. It remained without execution when James Brown and his wife sailed for Europe. On their homeward passage, Mrs. Brown thought it prudent to make an olographic will, which contains the following clause: “ My nephew, John B. Humphreys, of Louisiana, having a legal title to one-third part of the estate bought by my husband on German Coast, in Louisiana, consisting in land, negroes, sugar establishments, stock, and other pro *427 perty found thereon ; and he, the said Humphreys, having since purchased of my husband one other sixth part of said estate, for which he has not yet received a legal title, I do will and devise to him all my interest in such sixth part; and do authorize and request my husband to make him a deed for the said sixth, so that he may hold the said German Coast estate as partner, equal joint proprietor with my husband.”
As has been already said, James Brown, soon after his landing, executed a title to the undivided sixth part of the estate to his nephew, for the price of $18,000, according to their former agreement ; and a few months after, his wife died. After his death a part of the price remaining unpaid, and the nephew having died, a suit was instituted by his executor against the present plaintiffs, which terminated in the judgment which the present defendant pleads as res judicata, a plea which the Judge, a quo, has sustained. In our opinion he erred. We clearly indicated a suit against the present defendant, as the only one in which the plaintiffs could avail themselves of the devise of Mrs. Brown, whatever may be their rights under it.
Besides the plea of res judicata, there is the plea of the prescription of ten years, which, the conclusion to which we have come on the last plea of the defendant, renders it unnecessary to examine. This last plea is, that the defendant’s, (Clay’s,) testatrix did not devise any land to the plaintiff’s husband and ancestor, but the mere right of obtaining a deed for the sixth part of the estate to which he had no formal written title.
If our attention had been confined to that clause of the will in which the plaintiffs see a devise, it is not improbable that we would have supported their pretensions ; but as it was our duty to do, we have pondered upon every part of the will; and, indeed, upon all the facts of the case as presented in the record of the present suit, and that of the suit the judgment in which has been pleaded as res judicata. We have seen, that the testatrix left a widowed mother and sister, and several other sisters and brothers; that to each of the two former, she bequeathed a life annuity of $500; that she recommended her other brothers and sisters to the kindness of her husband, and expressed her hope that he would afford them all the assistance which his situation would *428 enable him to extend, to them, leaving them her heirs after the death of her husband, to whom she bequeathed a life estate in .her succession. As far as the evidence enables us to judge, J. B. Humphreys, the nephew of her husband, and consequently her’s by affinity, was comparatively a man of great wealth ; he had been for many years the partner of her husband in the plantation, at first for one-third, and afterwards for one-half, and the manager of it. His residence thereon enabled him to accumulate his revenue, while her husband, long employed as a senator of the United States, and a minister plenipotentiary to France, incurred expenses which very probably absorbed his revenue.
The pretensions of the plaintiffs cannot be sustained, unless we admit, that the testatrix intended for the wealthy nephew of her husband, a larger provision than that which she made for an aged parent, a widowed sister, and indeed for any of her other sisters or brothers. Imagination cannot suggest any ground on which we may conclude that such was her intention.
The will is the compass which must direct courts of justice in seeking the intention of the testator; and that intention when discovered, must direct the decision of the court. It is first to be attempted to be skimmed off the surface of the will. Prominent circumstances are to be considered. The amount of the estate ; the number of persons whom God and nature have placed so near the testator as to make it his duty to attend to their wants ; the situation of those who, in opposition to these, claim to be the object of the testator’s bounty ; their relation to him, if any exists ; and their comparative wealth or need.
According to this rule, the judge ought to descend into and interrogate his conscience; and the answer which he receives must dictate the judgment he is to pronounce.
We have done so, and find it our bounden duty to say, that the Court of Probates did not err in repelling the pretensions of the plaintiffs.

Judgment affirmed.